# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

RANDALL ERTZBERGER, Individually,
and as Personal Representative of the Estate
of DOROTHY FAYE ERTZBERGER,
Deceased,                                           Case No. _____

        Plaintiff,

vs.

HUNT VALLEY HOLDINGS, LLC f/k/a
FUNDAMENTAL LONG TERM CARE
HOLDINGS, LLC; FUNDAMENTAL
CLINICAL AND OPERATIONAL
SERVICES, LLC; FUNDAMENTAL
CLINICAL CONSULTING, LLC;
FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; THI OF BALTIMORE,
INC.; THI OF SOUTH CAROLINA, LLC;
THI OF SOUTH CAROLINA AT
MAGNOLIA MANOR-INMAN, LLC d/b/a
MAGNOLIA MANOR-INMAN; and
RUSTY FLATHMANN,

        Defendants.

## **NOTICE OF REMOVAL**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

    PLEASE TAKE NOTICE that Defendant Fundamental Clinical and Operational Services, LLC ("FCOS") hereby removes the above-styled action to this Court from the Court of Common Pleas for the County of Spartanburg, South Carolina. In support thereof, Removing Defendant FCOS states as follows:

    1.    Removing Defendant FCOS respectfully removes this action pursuant to 28 U.S.C. § 1441(a) because it is between citizens of different States and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

2. Plaintiff Randall Ertzberger, individually and as the personal representative of the estate of Dorothy Faye Ertzberger, commenced this action on January 15, 2016 by filing a Complaint in the Court of Common Pleas for Spartanburg County, South Carolina, styled *Ertzberger v. Hunt Valley Holdings, LLC et al.*, C.A. No. 2016-CP-42-148 ("State Court Action"). A copy of the docket sheet and all other documents on file with the Court of Common Pleas in the State Court Action are attached hereto as **Exhibit A**.

3. All of the Defendants in the State Court Action, other than FCOS and Defendant Rusty Flathmann, received Plaintiff's Summons and Complaint on January 19, 2016. Defendant Flathmann was served with the Summons and Complaint on February 4, 2016. Removing Defendant FCOS, however, has not been served. Accordingly, this notice of removal is timely. *See* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."); *see also In re Johnson & Johnson Cases*, Case Nos. 2:15-cv-05311-JGB (SPx), *et al.*, 2015 WL 5050522, at *8 n.8 (C.D. Cal. Aug. 24, 2015) (noting that a defendant may remove a case before receiving service of process (collecting cases)); *Hutton v. KLDM Transp., Inc.*, Civil Action No,. 14-3264, 2014 WL 3353237, at *4 (E.D. Pa. July 9, 2014) (same; collecting cases).

4. All Defendants in the State Court Action have joined in this Notice of Removal, except Defendant Flathmann, who was fraudulently joined, as explained below. *See* 28 U.S.C. § 1446(b)(2) (noting that only "defendants who have been properly joined and served must join in or consent to the removal of the action").

## I.     DIVERSITY OF CITIZENSHIP

### A.     Citizenship of Plaintiff

5.      Pursuant to 28 U.S.C. § 1332(a)(1), complete diversity of citizenship exists between the parties to the State Court Action.

6.      Plaintiff Randall Ertzberger, in his capacity as the personal representative of the estate of Ms. Ertzberger, is a citizen of the State of South Carolina because, prior to Ms. Ertzberger's death, she was a South Carolina citizen.  *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent").  Plaintiff Randall Ertzberger also is a citizen of South Carolina insofar as he is suing in his individual capacity.

### B.     Citizenship of Defendants

7.      Defendant Hunt Valley Holdings, LLC ("Hunt Valley") is a limited liability company that was organized under the laws of Delaware and which, prior to March 6, 2014, was named Fundamental Long Term Care Holdings, LLC.  As a limited liability company, Hunt Valley's citizenship is determined by the citizenship of its members.  *See Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004).  Hunt Valley's sole member is non-party Murray Forman, who is a citizen of the State of New York.  Thus, Hunt Valley is a citizen of the State of New York.

8.      Defendant Fundamental Administrative Services, LLC ("FAS") is a Delaware limited liability company, the sole, non-managing member of which is Hunt Valley.  Because Hunt Valley is a citizen of the State of New York, FAS also is a citizen of New York.

9. Defendant THI of Baltimore, Inc. ("THIB") is a Delaware corporation with its principal place of business in Maryland. Thus, THIB is a citizen of the States of Delaware and Maryland. *See* 28 U.S.C. § 1332(c)(1).

10. Removing Defendant FCOS is a Delaware limited liability company, the sole, non-managing member of which is Defendant THIB. Thus, FCOS, like THIB, is a citizen of the States of Delaware and Maryland.

11. Defendant Fundamental Clinical Consulting, LLC ("FCC") is a Delaware limited liability company, the sole, non-managing member of which is Defendant THIB. Thus, FCC, like THIB, is a citizen of the States of Delaware and Maryland.

12. Defendant THI of South Carolina, LLC ("THISC") is a Delaware limited liability company, the sole, non-managing member of which is Defendant THIB. Thus, THISC, like THIB, is a citizen of the States of Delaware and Maryland.

13. Defendant THI of South Carolina at Magnolia Manor-Inman ("Facility") is a Delaware limited liability company, the sole, non-managing member of which is Defendant THISC. Thus, the Facility, like THISC, is a citizen of the States of Delaware and Maryland.

14. Defendant Rusty Flathmann is a citizen of the State of South Carolina. As explained in Section III below, however, Defendant Flathmann was fraudulently joined to the State Court Action. His presence therefore is ignored for federal diversity jurisdiction purposes.

## II.    AMOUNT-IN-CONTROVERSY

15. Plaintiff's Complaint asserts causes of action based on purportedly deficient care and treatment that Ms. Ertzberger received during her residency at the Facility, from June 4, 2009 to August 14, 2014 (Compl. ¶¶ 43, 46), shortly before she died on August 16, 2014. (Compl. ¶ 110.) Plaintiff contends that due to the purported negligence of all "Defendants," Ms.

Ertzberger "suffered preventable choking incidents due to difficulty in swallowing foods that caused mental anguish, pain and suffering, including one that resulted in discolored lips, labored breathing, decreased oxygen intake, and death." (Compl. ¶ 47.)

16.     The Complaint contains seven counts. Specifically, Plaintiff alleges claims against all Defendants for negligence/recklessness (Compl. ¶¶71-76 (Count I)); corporate negligence (Compl. ¶¶ 77-83 (Count II)); joint venture liability (Compl. ¶¶ 84-88 (Count III)); amalgamation of interests (Compl. ¶¶ 91-96 (Count V)); neglect of a vulnerable adult under the South Carolina Omnibus Adult Protection Act, S.C. Code §§ 43-55-10 *et seq*. (Compl. ¶¶ 97-107 (Count VI)); and, wrongful death (Compl. ¶¶ 108-11 (Count VII)). In Count IV, Plaintiff purports to plead an alter ego/corporate veil-piercing theory, but it is directed to Defendant Hunt Valley, only. (Compl. ¶¶ 89-90.)

17.     Plaintiff seeks actual and punitive damages, and to recover his costs in pursuing the State Court Action. (Compl. at 18.) Although the Complaint does not allege an amount-in-controversy, the value of this matter in dispute exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a). *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("[J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that . . . '[t]he matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332,' so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner." (internal citations omitted)); *Mattison v. Wal-Mart Stores, Inc.*, C.A. No. 6:10-cv-01739-JMC, 2011 WL 494395, at *2-3 (D.S.C. Feb. 4, 2011) (same, applying *Ellenburg*).

### III. DEFENDANT FLATHMANN WAS FRAUDULENTLY JOINED TO THE STATE <u>COURT ACTION</u>

18.     The Complaint ¶ 21 names Rusty Flathmann as the only non-diverse Defendant in the State Court Action.  Although Flathmann is a South Carolina citizen, he must be disregarded in assessing diversity of citizenship because Plaintiff fraudulently joined him to this lawsuit.

19.     A resident defendant is fraudulently joined where "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. 2015) (per curiam) (citation omitted) (affirming denial of motion to remand where resident defendants were fraudulently joined because plaintiff failed to establish a right to relief against them).  The fraudulent joinder doctrine "enables the court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id*. (internal quotation marks and citation omitted).

20.     In evaluating fraudulent joinder, a court *may*, but is not required to, "look beyond the complaint to determine the propriety of removal."  *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014).  Where, as here, "a complaint is so inadequate and the record so entirely lacking in factual support that [the court] can only reasonably conclude that the non-diverse defendants were added to defeat jurisdiction, analysis of the entire record works an injustice on the removing party."  *Id.*

21.     This is not the first time that the improper anti-removal strategy employed by Plaintiff—*i.e.,* suing a single, non-diverse individual as a defendant—has been invoked in a nursing home negligence suit.  This case is substantively indistinguishable from *Cranston v.*

6

*Mariner Healthcare Mgt. Co.*, No. 3:03CV10-D-A, 2003 WL 21517999 (N.D. Miss. June 18, 2003), where an individual defendant was fraudulently joined to defeat removal. *Cranston* noted that "it is axiomatic that where a plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated." *Id.* at *3. "Failure to specify a factual basis for recovery against a nondiverse party, therefore, constitutes a fraudulent joinder of that party." *Id.* In an excerpt that could have been written with this case in mind, the *Cranston* court explained:

> [T]he Plaintiffs merely allege, in very general and conclusory terms, that the Defendants collectively engaged in tortious conduct. There are no specific factual allegations in the complaint concerning the individual [non-diverse defendant's] participation in any of the alleged tortious acts, much less any factual allegations that would tend to suggest that her involvement was anything other than peripheral. Instead, the Plaintiffs simply allege in very general terms that the Defendants, as a group, will face liability for their actions. Nowhere in the complaint do the Plaintiffs allege how [the non-diverse defendant] directly participated in or authorized the commission of a tort, or how [her] alleged liability is based on her own individual wrongdoing; instead, the Plaintiffs merely use boilerplate language that collectively implicates the Defendants. As the court has already explained, hypothetical allegations of this sort are plainly deficient.
>
> Accordingly, without a factual basis for concluding that [the non-diverse defendant] directly, personally, or actively participated in any alleged tortious conduct, the court finds that the Plaintiffs have no possibility of establishing a cause of action against [the non-diverse defendant] in state court, and that she was therefore fraudulently joined to defeat diversity.

*Id.* at *3-4 (internal citation omitted).

22.     Like *Cranston*, Plaintiff's Complaint—a form document that Plaintiff's counsel uses in suing nursing homes in other cases and which consists of a vague laundry list of anything a nursing home possibly could do wrong—is devoid of facts showing that Defendant Flathmann committed any wrongdoing. The only paragraph in the Complaint that specifically addresses Defendant Flathmann is Paragraph 21, which, in a single sentence, merely identifies him as an alleged "employee of [Defendant] FCC as the regional supervisor, and a member of the governing body of [the Facility]." Beyond that introduction, *every substantive allegation*

7

*that follows* is attributed to all (or a subset of) "Defendants," collectively, without ascribing any specific act or omission to Defendant Flathmann.

23. The United States Court of Appeals for the Fourth Circuit and other courts have recognized that this is precisely what the fraudulent joinder doctrine forbids. *See, e.g., Flores*, 563 F. App'x at 269 (finding fraudulent joinder where complaint directed allegations to "all of the defendants, diverse and non-diverse," but "contain[ed] no allegations of specific actions by the [non-diverse] defendants"); *Johnson v. GranCare, LLC*, Case No. 15-cv-03585-RS, 2015 WL 6865876, at *3 (N.D. Cal. Nov. 9, 2015) (facility administrator was improperly joined because, apart from an introductory paragraph in the complaint, "virtually every sentence that follows is addressed to *all* defendants collectively—none are directed specifically at [the administrator]"); *Donald v. Arrowood Indem. Co.*, Civil Action No. 2:10cv227KS-MTP, 2010 WL 4853290, at *7 (S.D. Miss. Nov. 23, 2010) ("The focus of this [fraudulent joinder] inquiry must be on the factual allegations specific to [the non-diverse defendant]; [plaintiff] cannot rely upon the numerous, collective allegations of 'Defendants'' wrongdoing."); *Shah v. Wyeth Pharm., Inc.*, No. CV 04-8652 DT (MANx), 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'Defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants."); *Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("The Complaint consists only of conclusory and generic allegations of wrongdoing on the part of all the Defendants. Such allegations are not sufficient to show that [the facility's administrator] was not fraudulently joined."). For this reason alone, there is no possibility that Plaintiff's Complaint could state a valid claim against Defendant Flathmann in state court. *See DeBerry v. McCain*, 275 S.C. 569, 574-75, 274 S.E.2d 293, 296 (S.C. 1981) (plaintiff could not

state a claim because "[t]he complaint [] contains no independent allegations of any acts or omissions by [the defendants]").

24. Defendant Flathmann is named in only six of the seven counts in the Complaint, which are directed to all "Defendants," indiscriminately. Plaintiff, however, does not come close to pleading a claim—nor could he do so—against Defendant Flathmann under any of these counts. We address each cause of action below.

### A.     Negligence (Count I)

25. Count I of the Complaint avers that all "Defendants" are liable for negligence. (Compl. ¶¶ 71-76.) To state a cause of action for negligence under South Carolina law, "the plaintiff must allege facts which demonstrate: (1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." *Savannah Bank, N.A. v. Stalliard*, 400 S.C. 246, 251, 734, S.E.2d 161, 163-64 (S.C. 2012).

26. Plaintiff's Complaint does not plead these elements. *First*, the Complaint does not establish that Defendant Flathmann owed a duty of care to Ms. Ertzberger. The Complaint ¶ 21 claims that, because Defendant Flathmann was a member of the Facility's governing body, "[p]ursuant to 42 C.F.R. § 483.75(d), [he] is liable and responsible for the negligent acts and delicts of [the Facility]." Section 483.75(d), entitled "Governing Body," provides:

> (1)  *The facility* must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility; and
>
> (2)  The governing body appoints the administrator who is—(i) Licensed by the State where licensing is required; and (ii) Responsible for management of the facility. [Emphasis added.]

9

27.     By its terms, this regulation imposes no duty of care on Defendant Flathmann or any other member of the Facility's governing body regarding the Facility's care and treatment of residents.  Section 483.75(d) does not even mention resident care, much less impose a legal duty or otherwise create a private right of action that makes governing-body members *personally* liable for the Facility's allegedly substandard care.  Section 483.75(d) merely is a requirement applicable only to *nursing homes* to qualify for participation in the Medicare and Medicaid programs.  *See* 42 C.F.R. § 483.1(b) (explaining that the regulations, including Section 483.75(d), in Part 483 "contain the requirements that an institution must meet in order to qualify to participate as a [skilled nursing facility] in the Medicare program, and as a nursing facility in the Medicaid program.  They serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid."); *Racher v. Westlake Nursing Home Ltd. Partnership*, No. CIV-13-364-M, 2015 WL 411210, at *2 (W.D. Okla. Jan. 29, 2015) ("42 C.F.R. § 483.75(d)[] does not impose [] a legal duty for purposes of holding [a member of the governing body] liable for negligence"); *cf. Salley v. Heartland-Charleston of Hanahan, SC, LLC*, Civil No. 2:10-cv-00791, 2011 WL 2728051, at *4 (D.S.C. July 22, 2011) (concluding that Section 483.10 creates no private right of action).

28.     In addition, the Complaint does not plead facts showing that Defendant Flathmann owed any other duty to Ms. Ertzberger that could support Plaintiff's negligence claim against him.

29.     *Second*, even if Plaintiff could establish that Defendant Flathmann had a legal duty, the Complaint alleges nothing factually demonstrating how he purportedly breached such a duty or caused Ms. Ertzberger's claimed injuries.  Accordingly, there is no possibility that Plaintiff could prevail on his negligence claim against Defendant Flathmann in state court.

### B. Corporate Negligence (Count II)

30. Count II of the Complaint avers that all "Defendants" are liable on a theory of corporate negligence. (Compl. ¶¶ 77-83.) "Corporate negligence, which literally means holding a *corporation* liable for its negligence acts, is a form of direct liability." *Simmons v. Tuomey Reg'l Med. Ctr.*, 330 S.C. 115, 123, 498 S.E.2d 408, 412 (S.C. Ct. App. 1998) (emphasis added). Under a corporate negligence theory, "direct corporate liability attaches due to a breach of a duty which runs directly between a parent company and a patient . . ." *Morrow v. Fundamental Long-Term Care Holdings, LLC*, 412 S.C. 534, 538, 773 S.E.2d 144, 146 (S.C. 2015).

31. Plaintiff has no corporate negligence right of action against Defendant Flathmann because he is an individual, not a corporation or other business entity to which a corporate negligence claim could apply. Even if corporate negligence could be asserted against an individual, Plaintiff's Complaint pleads no independent factual allegations addressed to Defendant Flathmann which establishes that he had a non-delegable (or any other) duty of care, that he committed any act or omission that breached any such duty, or that he did anything to cause Ms. Ertzberger's claimed injuries. Accordingly, there is no possibility that Plaintiff's Complaint could state a valid claim for corporate negligence against Defendant Flathmann in state court.

### C. Joint Venture Liability (Count III)

32. Count III of the Complaint avers that all "Defendants" are liable under a theory of joint-venture liability. (Compl. ¶¶ 84-88.) The Complaint, however, merely lists the purported elements of a joint venture but pleads no factual information demonstrating that the elements are met as to Defendant Flathmann or any other Defendant. To be sure, Plaintiff makes only the conclusory assertion that "[t]he Defendants [Hunt Valley], FCOS, FCC, FAS, THIB, [THISC],

11

[the Facility], and Flathmann were involved in a joint venture." (Compl. ¶ 88; *see also id.* ¶ 24 (alleging "[t]hat, upon information and belief, *Defendants* were involved in a joint venture to own, operate, and manage nursing homes for profit including the [Facility] where [Ms.] Ertzberger resided." (emphasis added).)  In light of these glaring defects, there is no possibility that Plaintiff's Complaint could prevail in asserting a joint-venture claim against Flathmann in state court.

### D.     Amalgamation of Interests (Count V)

33.    Count V of the Complaint avers that all "Defendants" are liable under a theory of amalgamation of interests. (Compl. ¶¶ 91-96.)  South Carolina courts have recognized that "a sibling company [may be] liable for the obligation of another sibling company" where there is an "amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities." *Mid-South Mgt. Co. Inc. v. Sherwood Dev. Corp.*, 374 S.C. 588, 605, 649 S.E.2d 135, 144 (S.C. Ct. App. 2007) (per curiam).

34.    The amalgamation of interests doctrine has no application to individuals, like Defendant Flathmann.  Even if such a theory could be used to impute a company's liability to an individual defendant, the Complaint makes only the conclusory assertion that all of the Defendants, including Defendant Flathmann, "are and have been operating as an amalgamation of interests creating a blurred corporate identity through an integrated enterprise and/or joint venture."  (Compl. ¶ 92.)  The Complaint is bereft of any factual allegations directed to Defendant Flathmann which show that he did anything to blur the identities and activities of himself and any other Defendant.  (Compl. ¶¶ 93-96 (pleading generic amalgamation of interest allegations that omit any reference to Defendant Flathmann.).)  Thus, there is no possibility that

12

Plaintiff's Complaint could succeed in pleading a theory of amalgamation of interests as to Defendant Flathmann in state court.

### E.     Neglect of a Vulnerable Adult (Count VI)

35.     Count VI of the Complaint avers that all "Defendants" are liable for violations of the South Carolina Omnibus Adult Protection Act.  (Compl. ¶¶ 97-107.)  Plaintiff contends that Defendants are liable for statutory "neglect" of Ms. Ertzberger under the Act.  (Compl. ¶ 99.)  The Act defines "neglect" to mean "the failure or omission of a *caregiver* to provide the care, goods, or services necessary to maintain the health or safety of a vulnerable adult including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, and the failure or omission has caused, or presents a substantial risk of causing, physical or mental injury to the vulnerable adult."  S.C. Code § 43-35-10(6) (emphasis added).

36.     In addition, the Act defines "caregiver" to mean "a person who provides care to a vulnerable adult, with or without compensation, on a temporary or permanent or full or part-time basis and includes, but is not limited to, a relative, household member, day care personnel, adult foster home sponsor, and personnel of a public or private institution or facility."  S.C. Code § 43-35-10(2).

37.     It is impossible for Plaintiff to state a claim against Defendant Flathmann under the Act because the Complaint does not specifically allege, or plead any facts from which to infer, that he "provide[d] care" to Ms. Ertzberger or otherwise was her "caregiver."  Moreover, the Complaint pleads no facts establishing that Defendant Flathmann *himself* (as opposed to all "Defendants") did or failed to do anything to "neglect" Ms. Ertzberger under the Act.  In short, there is no possibility that Plaintiff could prevail in stating a cause of action in state court against Defendant Flathmann under this count of the Complaint.

### F.     Wrongful Death (Count VII)

38.     Finally, Count VII of the Complaint avers that all "Defendants" are liable for Ms. Ertzberger's wrongful death. (Compl. ¶¶ 108-11.) Under South Carolina law, wrongful death is a statutory cause of action asserted when "the death of a person [is] caused by the wrongful act, neglect or default of another." S.C. Code § 15-51-10. As explained above, however, the Complaint alleges no facts showing that Defendant Flathmann *himself* committed any specific act or omission that caused Mr. Ertzerberger's death. Instead, Plaintiff's wrongful death allegations are directed only to "Defendants," indiscriminately, which is insufficient to preclude application of the fraudulent joinder doctrine. *See Johnson*, 2015 WL 6865876, at *4 (reaching the same conclusion under California law in finding that a non-diverse defendant was fraudulently joined). Accordingly, there is no possibility that Plaintiff's Complaint could successfully state a wrongful death claim against Defendant Flathmann in state court.

39.     In short, as in *Flores* and other cases cited above, Plaintiff's Complaint does not—and cannot—state a valid claim against Defendant Flathmann because the Complaint simply fails to allege that he had a legal duty of care or committed any wrongful conduct at all. Accordingly, Defendant Flathmann must be disregarded for federal diversity jurisdiction purposes, and dismissed from this case.

40.     As required by 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Removing Defendant FCOS will give written notice thereof to Plaintiff in the form attached as **Exhibit B**, which will be filed in the Court of Common Pleas for Spartanburg County, South Carolina.

Respectfully submitted,

YOUNG CLEMENT RIVERS, LLP

By: */s/ D. Jay Davis, Jr.*
D. Jay Davis, Jr. Federal I.D. #: 6723
Perry M. Buckner, IV Federal I.D. #: 11298
P.O. Box 993, Charleston, SC  29402
(843) 720-5406; E-mail:  jdavis@ycrlaw.com
pbuckner@ycrlaw.com
Attorneys for the Defendant
Fundamental Clinical and Operational
Services, LLC

Charleston, South Carolina

Dated: March 7, 2016

15